[McDonald v. Wood.]

# McDonald v. Wood.

*Contest of Election.*

1. *Contest of election; security for costs; statute of frauds.*—The indorsement on a declaration in a proceeding to contest an election that "We hereby acknowledge ourselves security for the costs of this contest," followed by the names of the sureties, is a valid obligation of suretyship for the costs of said contest, and is not open to objection that it does not show the consideration for the obligations assumed by the sureties, and is, therefore, void under the statute of frauds.

2. *Same; notice of illegal voters; misnomer; admissibility of evidence.*—Where the real name of a person is Alonzo O. Everett, but it is shown that he was generally known as "Lonny" Everett, in legal contemplation the latter name is as efficaciously his christian name as Alonzo; and, therefore, in the contest of an election, a notice served on the contestant that "L. Everett" has voted illegally for him, was notice that Alonzo O. Everett, generally called Lonny Everett, had voted illegally for him; and the refusal of the court to permit the contestee to prove that Alonzo O. Everett or Lonny Everett was not a legal voter, is erroneous.

3. *Same; error in the admission of evidence; how considered on appeal.*—Where on an appeal to this court from a judgment in favor of the contestant in a contest of an election, it appears that the court erroneously refused to permit the contestee to show that a certain person voted illegally for the contestant, it can not be said that the error was without injury, although the cause was tried by the court without the intervention of a jury, and the bill of exceptions did not purport to set out all the evidence; and for such error the judgment should be reversed.—(BRICKELL, C. J., and COLEMAN, J., *dissenting.)*

4. *Same; witnesses competent to testify how they voted.*—Where in the trial of a contest of an election, the falsity of the tickets as contained in the box returned, by reason of alleged fraudulent substitution, is the principal ground of the contest, it is competent and proper to prove by said electors at said election, for whom they voted; and the contestant is not limited to the tickets themselves to show how the electors voted.

5. *Same; irrelevant evidence.*—Since the law forbids one who was "a fixer" at the election to be present at the counting of the

[McDonald v. Wood.]

votes, it is the duty of the legal inspectors to see that such person is not present; and. therefore. on the trial of a contest of an election, the fact that the inspectors required one of the "fixers" to depart from the room where they were counting the votes. is not admissible in evidence to affect the rights of either party to the contest.

6. *Evidence; relevancy as to lines designated on map or plat.* Where in the trial of a case, the correct location of the lines designated upon a map or plat is a material issue, it is competent to ask a witness. who is not an expert. whether he knows anything about such lines; such question not necessarily calling for expert testimony.

7. *Same; same; competency of witness.*—In such a case, a witness who knows nothing of the true location of the lines on the map inquired about except the information derived by him. from a survey made by the surveyor employed by him to locate such lines, is incompetent to testify on the subject; such testimony on his part being merely hearsay evidence.

8. *Same; proper mode of raising objection thereto.*—Where questions to a witness are not objectionable. but the answers state facts that are illegal or inadmissible in evidence. the remedy is by a motion to exclude such facts instead of by an objection to the question.

APPEAL from the Circuit Court of Walker.

Tried before the Hon. J. J. BANKS.

This cause originated in an action brought by the appellee, W. D. Wood against the appellant, Alexander McDonald, to contest the election of the said McDonald to the office of mayor of Carbon Hill; Alabama, and to have one R. G. Cary, the opposing candidate for mayor, declared elected as mayor. The contest was brought under the law providing for contests for the office of judges of probate, as required by the charter of the town of Carbon Hill, Alabama.—Acts of 1891-92, p. 640.

In his petition or declaration of contest, the contestant or plaintiff assigned the following grounds of contest: "1st. Illegal votes were given to the said Alexander McDonald, which if taken from him, will reduce the number of his legal votes to or below the number of legal votes given to R. G. Cary for the same office.

"2d. Malconduct, fraud or corruption on the part of John McDonald, James Gallacher and John Linehan, or one of them, who were inspectors of said election, first, in that the said inspectors, or one of them, knowingly and willfully counted for said Alexander McDonald votes

which had been given by qualified electors of said town at said election for said R. G. Cary; or second in that the said inspectors, or one of them, knowingly and willfully substituted spurious ballots for said Alexander McDonald, in place of ballots which had been given by the qualified electors of said town of Carbon Hill at said election for R. G. Cary for said office of mayor." This declaration was duly and legally verified by the affidavit of the plaintiff. Upon this declaration there was the following endorsement: "We hereby acknowledge ourselves security for the costs of this contest. [Signed.] J. W. Ballenger, J. F. Anderson, O. R. Morris, R. G. Cary." "I am security for this cost to the amount of $250 and no more. [Signed.] R. V. Gross."

The defendant who was the contestee, filed a plea in abatement, in which he set up that the security given was insufficient, in that it was a special promise on the part of the sureties to answer for the debt, default or miscarriage of the plaintiff, W. D. Wood, and fails to express the consideration; and that, therefore, said contract was void under the statute of frauds. The plaintiff demurred to this plea upon the following grounds: 1st. That it does not answer the statements filed by the contestant. 2d. That it shows on its face that the contestant, at the institution of the contest, gave good and sufficient security for the costs of the contest. 3d. That said plea is not the proper way to take advantage of the alleged defect. This demurrer was sustained, and the defendants duly excepted. The defendant then moved the court to dismiss the cause upon the same grounds the plea in abatement was founded, which motion was overruled, and the defendant duly excepted.

In answer to the declaration of contest, the defendant denied the allegations of fraud contained therein, and alleged that illegal votes were voted and counted for his opposing candidate, R. G. Cary; and that if said illegal votes were taken from the vote cast for Cary, such subtraction would further reduce the number of legal votes cast for him, below the number of legal votes cast for the defendant.

On hearing the cause, the plaintiff introduced in evidence the poll list of the election in question, which contained 117 names. The contestant then introduced 82 witnesses who testified as to how they voted at said elec-

tion.   Each of these witnesses was asked the following question:   "For whom did you vote for mayor at the election at Carbon Hill, Alabama on July 22, 1895?" The defendant objected to the question as asked said witnesses, on the ground that the ticket was the best evidence of how they voted, and because the question itself was illegal.   The court overruled his objection to each of the questions asked each of the witnesses, and to each of these rulings the defendant separately excepted. In answer to these questions 64 of the witnesses testified that they voted for R. G. Cary for mayor.   Two of the witnesses testified that they did not vote for either of the candidates, and 15 of them testified that they voted for the defendant, Alexander McDonald for mayor. Each of these witnesses further testified as to whom they voted for for aldermen, giving in detail the ticket voted by each of said witnesses.   After the ballot box was introduced in evidence by the contestee, it was opened and there was found therein no ticket corresponding to the vote as told by several of the witnesses, which had been introduced by the plaintiff.

The defendant introduced in evidence the return of the managers of said election, which showed that the defendant had received at said election 65 votes for mayor and R. G. Cary had received 50 votes.   The defendant introduced as a witness each of the managers of said election, who testified that the return of the managers of said election was true, and honestly represented the vote as cast at said election; that there was no substitute of any false ballots in the ballot box, or false counting of ballots.

Cal Laird, who was "a fixer" for R. G. Cary upon the day of the election, was asked to tell the circumstances of his being prevented from remaining in the room when the votes were being counted after the election.   Upon his testifying to the facts and circumstances, the defendant moved to exclude such evidence upon the ground that it was illegal and immaterial. The court overruled this motion, and to this ruling the defendant duly excepted.   The defendant offered in evidence a written notice, which had been served upon the plaintiff, informing him that certain named persons who voted at said election illegally had cast their vote, and they had been counted, for R. G. Cary.   Among the names included in

this notice was "L. Everett." Among the 64 witnesses who swore they voted for Cary, for mayor, was one "A. O. Everett." Upon cross-examination of said A. O. Everett as a witness, he was asked, if he had been, at the time of said election, a resident of the State for one year next prior to said election. The plaintiff objected to this question upon the ground that the defendant had failed to serve notice upon the plaintiff of his purpose to take evidence to show that the witness Everett was an illegal voter. The defendant then asked the witness if he was not called and generally known by the name of "Lonny." The witness answered that he was generally known by that name, but that his real name was Alonzo. Thereupon the defendant asked the witness if he was not a citizen of Texas less than 12 months prior to said election. The plaintiff objected to this question, which objection the court sustained, and the defendant duly excepted. There was evidence introduced tending to show that some of the persons who had voted for the defendant lived outside of the corporate limits of Carbon Hill, Alabama. There was introduced in evidence, for the purpose of showing the limits of the town of Carbon Hill, the charter of said town as contained in the act of the General Assembly of Alabama, approved February 11, 1891, (Acts of 1890-91, p. 640). There was also introduced in evidence a map of the town of Carbon Hill, and evidence was introduced in reference to the section lines as shown by said map, in order to prove the true boundary of the town as designated in the charter.

Upon the introduction of O. R. Morris, as a witness, the plaintiff asked him the following question: "Do you know anything about these lines here?" referring to the section and range lines on the map. "Were you present when they were run at any time?" The defendant objected to these questions, upon the ground that the witness was not shown to have knowledge of the correctness of the survey, and was not an expert. The court overruled the objection, allowed the question to be asked and answered, and to this ruling the defendant duly excepted. The witness answered that he did know something about the lines inquired about, that he had a civil engineer (naming him) to run the lines for him about six years ago, in order that he could locate some land which he had bought. The witness then tes-

[McDonald v. Wood.]

tified as to the location of said lines, as shown on the map. On the cross-examination, this witness testified that it had been six years since he saw the line run; that it was before the present charter went into effect, and that the lines then surveyed were not run to fix the limits of the town but to locate some lands.

The bill of exceptions does not purport to contain all the evidence.

The cause was tried by the court without the intervention of a jury. Upon the hearing of all the evidence, the court rendered judgment in favor of the contestant against the contestee, and adjudged that the said R. G. Cary was entitled to the office of mayor of Carbon Hill. To the rendition of this judgment the defendant duly excepted. The contestee appeals and assigns as error the several rulings of the trial court to which exceptions were reserved.

H. L. WATLINGTON and WM. H. SMITH, JR., for appellant.—The plea in abatement should have been sustained. Every special promise to answer for the debt, default or miscarriage of another is void, unless in writing expressing a consideration.—Code of 1886, §1732. A promise to become security for costs for another is governed by the statute of frauds.—*Bullard v. Johns,* 50 Ala. 382. An agreement to indemnify a bondsman is governed by the statute of frauds.—*Brown v. Adams,* 1 Smith's Con'd Rep. 299. It is just as necessary to express the consideration as it is for the contract to be in writing.—*Bolling v. Munchus,* 65 Ala. 558; *Hood v. Robbins,* 98 Ala. 484; *Foster v. Napier,* 74 Ala. 394; *Phillips v. Adams,* 70 Ala. 373; *Westmoreland v. Porter,* 75 Ala. 452; *Sharman v. Jackson,* 47 Ala. 329; *Rigby v. Norwood,* 34 Ala. 129.

The objection of the defendant to the testimony of the witness as to how they voted on the election, should have been sustained. The ballot deposited by such witnesses was the best evidence of how they voted.—*Inglis v. Shepherd,* 9 Amer. & Eng. Corp. Cases, 54; *Owens v. State,* 11 Amer. & Eng. Corp. Cases, 132.

The court erred in refusing to permit the defendant to prove that A. O. Everett was not a legal voter.—*Diggs v. State,* 49 Ala. 311; Section 2193 Clark's Manual Crim. Law.

[McDonald v. Wood.]

COLEMAN & BANKHEAD, *contra.*—The suretyship for costs is not such an undertaking as to require that the consideration should be expressed in the writing. The form used in this case has been used ever since that provision of the statute of frauds was inserted which requires contracts to express the consideration, and has been held sufficient in the following cases: *Morrow v. Russell,* 99 Ala. 271; *Marshall v. Croom,* 50 Ala. 479; *Powers v. Mayor,* 54 Ala. 214; *Ex parte Camp,* 35 Ala. 143; *Satterwhite v. State,* 28 Ala 65; *Williams v. McConico,* 27 Ala. 572; *Crump v. Wallace,* 27 Ala. 277; *Riddle v. Hanna,* 25 Ala. 512; *Boswell v. Morton,* 20 Ala. 235; *Hilliard v. Brown,* 103 Ala. 318.

The bill of exceptions does not purport to set out all the evidence, and the rulings of the lower court on the admission of the testimony will not be reviewed.—*Allen v. Draper,* 98 Ala. 590; *Webb v. Ballard,* 97 Ala. 584. In this case there was no evidence excluded, and when the court, without a jury, determines the issue and the legal evidence received authorizes the conclusion reached, the conclusion reached must be sustained. *Bayonne Knife Co. v. Umbenhauer,* 107 Ala. 496.

But the court did not err in its rulings on admission of evidence. The court properly allowed oral testimony of the contents of the ballots. Under our system of elections the ballots cannot be identified, and the only way that it can be ascertained how a person voted is by his oral testimony. In addition to this, when fraud by substitution of ballots is charged, as in this case, it may always be proven by parol.—McCreary on Elections, (3d ed.), §432.

The testimony of Morris objected to by the contestee was admissible. Whenever the boundary line of a corporation is vague and indefinite, the practical interpretation given by the citizens of the disputed district in exercising municipal privileges will be adopted.—1 Dillon Municipal Corp., (4th ed.), §184, note; 15 Am. & Eng. Encyc. of Law, 1001, note.

The bill of exceptions does not purport to set out all the evidence. And in cases of this kind it will be presumed that there was other evidence sufficient to support the verdict.—*Hood v. Pioneer M. & M. Co.,* 95 Ala. 461; *Evansville, P. & T. R. Packet Co. v. Slater,* 101 Ala. 245; *Thorn v. Kemp,* 98 Ala. 417; *Black v. Pratt C. &*

*C. Co.*, 85 Ala. 504; *Webb v. Ballard*, 97 Ala. 584. There is no exception in this case to the finding of the court on the facts. The judgment entry shows what the finding was. The exception simply goes to the rendition of the judgment on the finding. The court having found the issue in favor of the contestant, there was nothing else to do but render the judgment. But however this may be, when witnesses are examined orally, the finding of the court on a disputed question of fact will not be disturbed.—*Woodrow v. Hawving*, 105 Ala. 240; *Gill v. Daily*, 105 Ala. 323; *Nooe v. Garner*, 70 Ala. 442.

HEAD, J.—There was no merit in the several objections made to the security for costs. The sureties themselves executed the obligation; it shows the consideration was the institution of the contest, and bound the sureties for the costs thereof. The case is unlike *Bullard v. Johns*, 50 Ala. 382.

The bill of exceptions does not purport to contain all the evidence. We cannot, therefore, review the court's findings of fact.

But, the judgment must be reversed by reason of the refusal of the court to permit the contestee to prove that A. O. Everett, or "Lonny" Everett, as he was generally called, who had voted for Cary, was not a legal voter. The contestee had served notice on contestant of the names of persons charged by him to have voted illegally for Cary, among which was the name "L. Everett." This man's name was Alonzo O. Everett. He voted for Cary at the election. The court refused to permit contestee to prove that he had not, at the time of the election, been a resident of the State for twelve months, on the ground that the name "L. Everett," as it appeared in the notice, did not legally notify contestant of the purpose to make such proof. There was no exception by contestant to the sufficiency of the notice, on its face, on account of any of the names being stated with only initials of christian names, as many of them were stated, or on any other account. Everett being generally known by the christian name of "Lonny," in legal contemplation, that was as efficaciously his christian name as Alonzo. By it he could legally have been indicted, tried and convicted for any crime he may have committed, against any plea of mis-nomer. The notice,

[McDonald v. Wood.]

as contestant accepted it, was sufficient, and the proposed proof ought to have been admitted. We cannot affirm that this error did not affect the result. Under the ruling, the court could not exclude, in its final finding, the vote of Everett, and we have no right to presume that all the evidence was such that its non-exclusion did not prejudice the contestee.

There was no error in permitting the witnesses produced by contestant to testify for whom they voted. The falsity of the tickets, by reason of the alleged fraudulent substitution, was the gist of the action, and to bind the contestants to the tickets themselves, which the inspectors had preserved, for proof of how the electors voted, would be to render the contest an empty and useless proceeding.

The law forbade the "fixer," Laird, to be present at the counting of the votes, and it was the legal duty of the inspectors to require him to depart. The fact that they did so cannot be received in evidence to affect the rights of either party to the contest.

There was nothing objectionable in the question to the witness, O. R. Morris, as to the lines. They did not necessarily call for expert testimony. If the answers to the questions stated facts that were illegal, the remedy was to move to exclude such facts. There was no such motion here. We remark, however, that if the witness knew no more of the true location of the lines than the information derived by him from the survey made by a surveyor employed by him to locate them, he was not competent to testify on the subject. It would be hearsay merely.

This disposes of the exceptions reserved.

Reversed and remanded.

COLEMAN, J., *dissenting.*—Alexander McDonald and R. G. Cary were opposing candidates for the office of mayor of Carbon Hill. McDonald was declared to be elected. W. D. Wood, the appellee, instituted the present action to contest McDonald's election, and the trial court found the issue in favor of the contestant, Wood, from which finding this appeal was prosecuted.

The reversal is based upon two propositions. The first is, that the court erred in refusing to admit evidence to show that one Everett, whose vote was counted

[McDonald v. Wood.]

for Cary, was not a legal voter; and second, that as the bill of exceptions did not purport to set out all the evidence, we have no right to presume that this error did not prejudice the contestee. The writer is of the opinion that the court has overlooked or misapplied two principles of law and practice in reaching the conclusion to reverse the case. The case was tried before the court without a jury. The rule is, that when the court passes upon the facts, and the conclusion reached from all the legal evidence is correct, this court will not reverse, although the trial court may have erred either in the admission of illegal evidence, or in the exclusion of evidence which should have been admitted, unless it is fairly inferable that but for the error, the court could and ought to have rendered a different conclusion. The rule may be different when a jury passes upon the facts, for this court will not undertake to determine that the verdict of the jury would have been the same, notwithstanding the error.

In the case of *Holmes v. The State*, 108 Ala. 24, the court used this language: "When trials are had before the court, without a jury, it is only necessary to inquire if there was sufficient legal evidence to sustain the judgment; and if such is found to be the state of the record, we do not reverse because other incompetent matters may have also been heard by the trial judge, the presumption being here indulged that the action of the court in rendering its judgment was induced by and rested upon the sufficient legal evidence." And in the case of *Ramey v. Grocery Co.*, *Ib.* 476, following the same rule, it was declared that when the case was tried without the intervention of a jury, the admission of illegal or irrelevant evidence would not operate to reverse the case, if the judgment was justified and sustained by the legal evidence.

I am not sure that the opinion of the court conflicts with the foregoing rule, inasmuch as some stress is put upon the fact, that the bill of exceptions does not purport to set out all the evidence. Upon this point, the rule is uniform that when the bill of exceptions fails to state all the evidence, this court will presume that there was other evidence in order to sustain the judgment or ruling of the trial court; but in no previous instance has it been held, that this court would presume there was

other evidence in order to put the trial court in error, and to reverse the case. In the case of *Evansville &c. Packet Co. v. Slater*, 101 Ala. 245, the record did not sustain the judgment of the trial court, but inasmuch as the bill of exceptions did not purport to contain all the evidence, it was declared that under the uniform ruling of the court, we must presume there was other evidence in the cause to support the judgment below.

If the record in the case at bar showed that the contest was sustained by a majority of one, and that majority depended upon counting the vote of Everett for Cary, in whose interest the contest was prosecuted, then the court erred in refusing to receive evidence to show that he was not a legal voter, and the cause ought to be reversed. But if the record affirmatively shows, that Cary was entitled to a clear majority, after rejecting the vote of Everett, the judgment ought to be affirmed. It is contrary to the established practice of this court, in such cases, to presume there might have been other evidence, not stated, to overcome the affirmative evidence which is stated, and upon such presumption, reverse the case.

In my opinion, the record contains sufficient evidence to support the judgment, without counting the vote of Everett for contestant, and the reversal is not founded on correct principles of justice.

BRICKELL, C. J., concurs in the dissenting opinion.